Ben D. Kappelman
Dorsey & Whitney LLP
Millennium Building
125 Bank Street, Suite 600
Missoula, MT 59802-4407
Phone: (406) 721-6025
Fax: (612) 395-5451
kappelman.ben@dorsey.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TURNER MINING GROUP, LLC, | ) |
| Plaintiff, | ) No. CV-24-168-BLG-TJC |
| -vs- | ) **COMPLAINT** |
| STILLWATER MINING COMPANY D/B/A SIBANYE-STILLWATER | ) |
| Defendant. | ) |

Plaintiff Turner Mining Group, LLC ("Turner"), for its claims against Defendant Stillwater Mining Company d/b/a Sibanye-Stillwater ("Stillwater"), states and alleges as follows:

## **PARTIES**

1. Turner is a limited liability company organized under the laws of the State of Texas. Turner's members and managers are citizens of Colorado and Indiana. It is authorized to do business in Montana. Its principal place of business

is in Indiana.  Turner is a citizen of Indiana and Colorado.

2. Stillwater is a corporation organized under the laws of the State of Delaware.  It is authorized to do business in Montana.  Its principal place of business is in Montana.  Stillwater is a citizen of Delaware and Montana.

## VENUE AND JURISDICTION

3. Venue in this Court is proper because the contract between the parties contains a forum selection clause that mandates federal court or a state court in Billings, Montana as the proper venue for any claims arising out of the contract.

4. Venue in this Court is proper because the real property that is the subject of this action is located in Sweet Grass County, Montana.

5. This Court has personal jurisdiction over Stillwater because it can be found within the State of Montana, because its principal place of business is in Montana, and because it transacted business in Montana, owns property in Montana, and contracted for services to be rendered in Montana on that property.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Turner and Stillwater are citizens of different states.

## FACTUAL ALLEGATIONS

7. Stillwater owns the East Boulder Mine located at 1171 E Boulder Rd., McLeod, Montana 59052 (the "Property").  The Property consists, in part, of a group of more than 250 adjoining mining claims owned by Stillwater, including

parcels with homestead entry survey numbers 858A, 858B, and 260 owned by Stillwater in fee (the "Patented Claims") and approximately 250 unpatented mining lode, tunnel, and millsite claims held by Stillwater, with paramount title held by the United States, located throughout Parcel Blocks ("PB") PB37, PB38, PB39, PB40, PB43, and PB44, which unpatented claims are more particularly described in <u>Exhibit A</u> (the "Unpatented Claims").

8. Turner is a construction contractor, primarily focused on providing materials and services to entities engaged in mining.

9. On January 1, 2020, Stillwater and Turner entered into a General Terms and Conditions, Contract #3864 (OS) ("Agreement"), whereby Turner agreed to perform work under a Master Agreement to improve the Property.

10. Turner's scope of work under the Agreement included relocation of existing infrastructure and construction of embankments surrounding a tailings pond located on the Unpatented Claims (the "Project"). The Project improved the entire Property, including the Patented Claims.

11. Turner's scope of work required altering the surface of the land by excavation, but did not entail the removal of material for the primary purpose of making the material available for sale or use.

12. Under Section 4.a. and Appendix B of the Agreement, Stillwater agreed to pay Turner $24,245,908.50 for the work. Any added scope or bid items

not priced would be billed on a time and materials basis, with procurement of materials based on a passthrough cost plus 10% for corporate overhead and profit.

13. The Agreement included a retention schedule in Appendix B that allowed Stillwater to withhold retention from payment applications at a rate of 10% of the billed amount up to an annual cap of $350,000.00. Retainage was due upon completion of the work.

14. Stillwater further promised under Section 4.c. of the Agreement to pay Turner within forty-five (45) days of approval of each invoice and to advise Turner of its approval or reason for non-approval within five (5) days of each invoice submission.

15. Under Section 6 of the Agreement, Stillwater could initiate changes in the work via issuance of change orders, and Turner agreed to perform the change order work after signing any applicable change order.

16. Section 13 entitles Turner to an extension of time to perform the work in the event of a force majeure.

17. Section 19 sets forth the process for Turner to achieve completion of the services required under the Agreement. Under that provision, Turner must first give Stillwater written notice of completion, at which point Stillwater has thirty (30) days to confirm completion in writing or provide a detailed list of services that, according to Stillwater, are defective or incomplete. Turner may then correct

or complete the services noted by Stillwater and achieve completion. If Stillwater does not respond to the notice of completion within thirty (30) days, the services are deemed complete.

18. Under Section 7, the term of the Agreement was until termination.

19. Section 21 defines the conditions for termination of the Agreement. Under Section 21.a., Stillwater may terminate Turner for default if Turner breaches a material obligation under the Agreement, Turner fails to correct or initiate remedial measures within thirty (30) days of Stillwater's written notice of the breach, and Stillwater provides further written notice to terminate the Agreement. In the event of termination for default, Stillwater must pay Turner's invoices due and owing on the date of termination pursuant to Section 21.d.

20. Under Section 21.b., Stillwater also has the right to terminate the Agreement for convenience upon twenty-four (24) hours' written notice to Turner. In the event of termination for convenience, Stillwater must pay Turner for the approved services rendered as of the effective date of termination, plus negotiated termination costs including settlement of commitments, liabilities, and demobilization pursuant to Section 22.d.

21. Finally, Section 12 of the Agreement included a mutual waiver of consequential damages, including any special incidental, direct, consequential, exemplary or punitive damages or losses, loss of profits or revenues, loss of

opportunities, loss of goodwill, and loss of capital.

22. On or about February 1, 2024, Stillwater notified Turner that it would award a portion of the work included in Turner's original bid for 2024 to a different contractor. Stillwater instructed Turner to complete its 2023 work, true-up the final cubic yard count, de-mobilize, and reconcile any open issues.

23. Stillwater's notice amounted to a termination for convenience, entitling Turner to payment for its services rendered through the effective date of termination, plus negotiated termination costs including settlement of commitments, liabilities, and demobilization.

24. Turner continued to perform work as directed by Stillwater until completion on or about March 8, 2024.

25. At the time of termination, Stillwater owed Turner $3,242,867.51 under the terms of the Agreement. Turner invoiced Stillwater for these amounts.

26. On or about May 10, 2024, Stillwater informed Turner that it disagreed with the amounts invoiced by Turner and would only pay $964,065.74 to "finalize our account" with Turner.

27. Among the amounts disputed by Stillwater were costs Turner incurred to demobilize from the Project and its retention. These amounts were owed under the terms of the Agreement and improperly withheld.

28. Stillwater also attempted to backcharge Turner for delays to the work

of another contractor, Loenbro, LLC ("Loenbro"), even though such costs were barred by the Agreement's consequential damages waiver. Moreover, Turner was not responsible for the delays to the other contractor's work, to the extent any occurred.

29. At the time of termination, Stillwater owed Turner $349,987.63 in unpaid retainage.

30. In addition, Turner was entitled to payment for demobilization costs under its original scope of work and incurred additional costs to demobilize from the Project upon termination. The total amount of demobilization costs was $520,632.29 as of April 25, 2024.

31. As of the date of termination, Stillwater owed Turner $3,242,867.51 in total additional costs and retainage under the Agreement.

32. Despite demand, Stillwater has refused to pay Turner the amounts due and owing under the Agreement.

33. On or about May 16, 2024, Turner filed a Mechanic's Lien with the Clerk of Sweet Grass County, which was recorded at Page 4343 (the "Construction Lien").

34. The Construction Lien attached to the improvements and real property located at 1171 E Boulder Rd., McLeod, Montana 59052, including the Patented Claims and Unpatented Claims.

35. The Construction Lien properly identified the owner of the Property as Stillwater.

36. The amount stated in the Construction Lien was $3,242,867.51, representing the total amount due and owing under the Agreement.

## COUNT I – BREACH OF CONTRACT
**(Against Stillwater)**

37. The preceding paragraphs are realleged and restated for all purposes.

38. On or around January 1, 2020, Stillwater and Turner entered into the Agreement.

39. Under the terms of the Agreement, Stillwater covenanted and agreed to pay Turner for work performed under the Agreement.

40. In addition, Stillwater agreed to pay Turner within forty-five (45) days of approval of each invoice and to advise Turner of its approval or reason for non-approval within five (5) days of each invoice submission.

41. Finally, under the terms of the Agreement, in the event of termination, Stillwater was required to pay Turner for its services rendered through the effective date of termination, plus negotiated termination costs including settlement of commitments, liabilities, and demobilization.

42. Turner has performed all of its obligations under the Agreement, and all conditions precedent to Stillwater's obligation to fully and properly perform have been satisfied.

43. Stillwater breached its contractual obligations to Turner under the Agreement by failing and refusing to pay to Turner amounts owed under the Agreement when due. Stillwater has continued to fail and has refused to pay to Turner the amounts owed under the Agreement.

44. As a result of Stillwater's breach of contract, Turner has been damaged in an amount to be proven at trial.

### COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING
### (Against Stillwater)

45. The preceding paragraphs are realleged and restated for all purposes.

46. The Agreement entered into between Turner and Stillwater contained an implied covenant of good faith and fair dealing.

47. Stillwater breached its implied covenant of good faith and fair dealing. Stillwater's breaches of the implied covenant of good faith and fair dealing include, but are not limited to, failing to pay Turner for the value of Turner's work performed prior to termination.

48. Stillwater's breaches of the implied covenant of good faith and fair dealing have caused damages to Turner.

49. As a result of Stillwater's breaches of the implied covenant of good faith and fair dealing, Turner is entitled to recover damages from Stillwater in an amount to be proven at trial.

## COUNT III – UNJUST ENRICHMENT
### (Against Stillwater)

50. The preceding paragraphs are realleged and restated for all purposes.

51. From April 5, 2021, through March 8, 2024, Stillwater directed Turner to perform work and services to benefit Stillwater and the Project.

52. Stillwater has retained the benefits of Turner's work in the form of relocated infrastructure and tailings embankments at the East Boulder Mine and has obtained revenue as a result. Stillwater has not fully compensated Turner for such benefits.

53. Based on Stillwater's receipt of benefits derived from using Turner's engineering work, it would be inequitable for Stillwater to retain such benefits without paying Turner the value of such benefits.

54. Turner has suffered damages in the form of unjust enrichment of Turner for which it is entitled to recovery for the payment of the value of such unjust enrichment in an amount to be proven at trial.

## COUNT IV – QUANTUM MERUIT
### (Against Stillwater)

55. The preceding paragraphs are realleged and restated for all purposes.

56. Stillwater wrongly induced Turner to perform work that unjustly enriched Stillwater.

57. Equity requires Stillwater to compensate Turner for the value of its services.

## COUNT V – FORECLOSURE OF CONSTRUCTION LIEN
### (Against Stillwater)

58. The preceding paragraphs are realleged and restated for all purposes.

59. On May 16, 2024, Turner properly perfected a construction lien against the Property, including the Patented Claims and Unpatented Claims, pursuant to Montana law by filing in the office of the Clerk and Recorder for Sweet Grass County, its Construction Lien against the Property for unpaid services and expenses Turner incurred in connection with the construction of real estate improvements on the property identified in the Construction Lien.

60. The Construction Lien contains a true account of the unpaid portion of Turner's contract price with Stillwater for work performed on the Project.

61. Turner last furnished labor and services related to the Project on March 8, 2024.

62. Turner filed its Construction Lien on May 16, 2024, a date within 90 days of the date Turner last performed services on the Project.

63. The Construction Lien contained statements which listed all necessary elements required by Mont. Code Ann. § 71-3-535(3).

64. Turner was not required to file a Notice of Right to Claim a Lien under Mont. Code Ann. § 71-3-531(1)(d) because the Project is partly or wholly commercial in character.

65. A copy of the Construction Lien was served on the Project owner,

Stillwater, via certified mail, return receipt requested.

66. The Construction Lien is a valid and enforceable construction lien under Montana law.

67. Stillwater has failed to satisfy the Construction Lien.

68. Turner is entitled to foreclosure of the Construction Lien against the Property, including the Patented Claims and Unpatented Claims, and adjudication of its rights thereto.

### COUNT VI – PROMPT PAYMENT ACT
### (Against Stillwater)

69. The preceding paragraphs are realleged and restated for all purposes.

70. Between January 25, 2024, and April 25, 2024, Turner submitted invoices for payment for services performed under the Agreement.

71. Under the terms of the Agreement, payment of the invoices were due between March 10, 2024, and June 9, 2024, yet Stillwater failed to pay the amount due by those dates.

72. Turner is entitled to payment of interest on the unpaid balance due under its invoice.

**WHEREFORE**, Plaintiff Turner demands judgment against Stillwater as follows:

1. Adjudge the amount, validity, and priority of Plaintiff's lien against the Property, including the Patented Claims and Unpatented Claims;

2.  Foreclose upon Plaintiff's lien against the Property, including the Patented Claims and Unpatented Claims;

3.  Award Plaintiff compensatory damages in an amount to be proven at trial;

4.  Award Plaintiff costs and attorneys' fees in an amount to be supported by a subsequent affidavit;

5.  Award Plaintiff interest under Mont. Code Ann. § 28-2-2104;

6.  Award Plaintiff pre-judgment and post-judgment interest; and

7.  Award Plaintiff such further relief as the Court deems just and equitable.

DATED this 21st day of November, 2024.

DORSEY & WHITNEY LLP

*/s/ Ben D. Kappelman*
Ben D. Kappelman
Dorsey & Whitney LLP
Millennium Building
125 Bank Street, Suite 600
Missoula, MT 59802-4407
Telephone: (406) 721-6025
Fax: (612) 395-5451
kappelman.ben@dorsey.com

*Attorney for Plaintiff*